[Filed July 2, 1888.]

## J. M. POWELL ET AL., RESPONDENTS, *v.* WILLIAM HEISLER, APPELLANT.

THE JURISDICTION OF EQUITY to correct a mistake in the settlement of partnership accounts has been often exercised, and cannot be disputed. But in cases involving mistakes, arising from an alleged want of proper diligence, the jurisdiction will, in a great measure, depend upon the particular facts and circumstances.

PARTNERSHIP SETTLEMENT. —Where a claim arising from a mistake asserted by
one party and denied by the other in good faith, and the parties by mutual con-
sent select a mode of settlement, and both act upon it, and there was at the time
no inequality of footing, or means of knowledge as to the facts, nor any fraud
or undue advantage or mistake made by those to whom such disputed matter
was committed; *held*, that in view of all the facts a case for relief was not
presented. Where a mistake is alleged, the proof of it ought to be clear and
satisfactory.

APPEAL from Wasco County.

*Bennett & Wilson*, and *Nichols & Johns*, for Respondents.

*E. B. Dufur*, for Appellant.

LORD, C. J.—This is a suit to correct an alleged mistake in
the settlement of a partnership, and to recover a certain sum
specified therein.

The complaint states the terms of the partnership agreement,
and a charge to the individual account of J. M. Powell of the
sum of $1,451.22, which constitutes the alleged error or mistake.
It states also the facts in respect to the dissolution of the part-
nership by the withdrawal of the defendant, and the manner in
which the alleged mistake occurred by reason thereof. The
answer is a denial of the material facts, and as further defenses
makes a claim for damages for failure to pay according to the
terms of the dissolution for the interest of the defendant, and
asks that the same be allowed as a counter-claim; that the
alleged mistake in the settlement of their partnership affairs was
arbitrated and settled in accordance therewith; and that at the
dissolution there was a statement of account and final settlement,
and that the defendants have had possession of the books, etc.,
ever since, etc. The reply put these facts in issue.

It appears by the evidence that prior to January 9, 1879, all
the parties to this suit were residing near Prineville, and that
the defendant was keeping store at that place; that by reason
of previous conversations in respect thereto a partnership
resulted, and that on that date the defendant sold, as he claims,
one-half interest in his store and business to J. M. Powell, solely,
and entered into an agreement accordingly under the firm name

of Heisler and Powell.    It is insisted by the other plaintiffs that they were silent partners, but the defendant claims that he dealt with and only knew one J. M. Powell in the affair.    If they were such, the evidence indicates that the defendant did not know it.    All the dealings before the formation of the partnership, and all that was subsequently done at the dissolution were conducted with J. M. Powell.    That matter, however, is of little consequence in determining the issue presented by this record.

By the terms of the partnership agreement there was to be put into the business a sum equal to the value of the stock of merchandise then owned by Heisler, less his indebtedness, the amount being fixed at the sum stated; but as nothing was put in by J. M. Powell or the other plaintiffs, this sum was charged to his individual account, and constitutes the ground of the alleged mistake upon which the bill is predicated.    The partnership was dissolved on February 10, 1880.    For the interest of the defendant, which comprised one half of the stock of merchandise, the store notes, and accounts due the firm, J. M. Powell, as the other representative of the firm, agreed to give him a certain tract of swamp land, a certain number of horses, cows with calves, and yearling heifers, and if the same amounted to more than the defendant's interest in the store, Powell was to give him his note for the remainder.    As to these terms Heisler claims that if the amount of the cattle turned over should fall short of the purchase price of his interest in the store, Powell was to make up the difference in cows with calves and yearling heifers from other sources at the prices agreed.

In this settlement for a dissolution all matters were necessarily gone over in order to ascertain the respective interests of the parties, and carry into effect the agreement by doing the acts required by it, and transferring the property accordingly.    In this settlement the individual accounts of the defendant Heisler and plaintiff Powell were alone treated as representing partnership interests.    The other plaintiffs each had an account with the firm, which was treated as assets of the firm.    Whereupon the defendant retired from the firm, and the business was con-

ducted under the firm name of Powell & Co., and all books belonging to the old firm were left with the new firm. Several years after this sale and settlement of their partnership business, and when the defendant had gone into business at another place, that is, in the fall of 1884, the plaintiff J. M. Powell notified the defendant that he had discovered a mistake in their settlement which consisted of the charge of $1,451.22 as alleged, and claiming that the defendant owed him the whole of that sum. Heisler demurred to this, and contended the fact and truth was otherwise, but expressed a willingness to submit the matter to any competent book-keepers, and abide by their decision. The result was that subsequently they agreed to settle the matter in dispute in this wise. The gentlemen selected were Messrs. Cross and Hudson of The Dalles, who are claimed to be competent and expert in book-keeping, and to them was submitted a statement of the facts and the books containing the entry. They decided that the defendant should pay J. M. Powell $725.61, being half of the original entry, and we may assume that both accepted the decision, as they acted upon it, the one paying the amount decided to be due, and the other receiving it. To be brief, nothing further occurred, except Powell seems to have received some impression that there was more due him, before the commencement of this suit. Upon this state of facts ought we to entertain this bill.

The contention of the appellant is, (1) that there was a full and final settlement of all the partnership business at the time of the dissolution; (2) that to avoid disputes and settle the matter, they submitted the question in dispute to arbitrators, mutually selected and agreed upon, and that they accepted and acted upon the same as a finality. The jurisdiction of equity to correct a mistake in the settlement of partnership accounts has been often exercised, and is not disputed.

The counsel for the defendant insists that its proper exercise is limited to cases where the party is free from negligence. That if he possessed the means of information, or by the exercise of reasonable diligence could have obtained the knowledge, the court will not relieve him. But we think in this class of cases,

involving mistakes, arising from an alleged want of proper diligence, the jurisdiction will in a great measure depend upon the particular facts and circumstances surrounding the transaction. Mr. Pomeroy says that "even a clearly established negligence may not of itself be sufficient ground for refusing relief, if it appear that the other party has not been prejudiced thereby. It has been said that equity would never give any relief for a mistake if the party could by reasonable diligence have ascertained the real facts, nor where the means of information are open to both parties, and no confidence is reposed, nor unless the other party was under some obligation to disclose the facts known to himself and concealed them. A moment's reflection will clearly show that these rules cannot possibly apply to all instances of mistake, and furnish the prerequisite for all species of relief." (Pomeroy's Equity Juris. § 856.) Of course, this upon the assumption that there is a mistake, and that it has been made to appear clearly and satisfactorily.

The facts show that the parties enjoyed equal opportunities at the settlement and before to ascertain the true state of the partnership affairs. To avoid the effect of this it is alleged that the plaintiffs were practically ignorant of the science of book-keeping. Nor does the evidence show that the defendant was an expert or particularly skillful in keeping accounts. As a necessity of business, he learned and managed to keep accounts correctly. In practical sense and in knowing how and what ought to be done, the defendant enjoyed no particular advantage over the other parties. There is no pretense that there was any concealment of facts, or anything intended or contrived by the defendant calculated to surprise or mislead. The original contract was made for the partnership, with a full understanding of its terms, and the entry complained of was made and remained in the books open for inspection during the period of the partnership; and at the dissolution and since the plaintiffs have had the entire custody of the books, and thus during a period of several years, the means of discovery and the opportunity to know the correctness of the calculation including this charge, or to employ some competent person to investigate it. Nor is there

any doubt but what at the settlement of their affairs and accounts they stood upon equal grounds, with equal opportunities and equal means of information.

There is no concealment or fraud or undue advantage claimed. The settlement is deliberately made, the defendant withdraws, and proceeds to another town to pursue his business on his own account, leaving the books and all the matters connected with the partnership in the hands of the plaintiff. And yet even in such a case if there was a mistake, which in effect took the property of one and gave it to another, although there was a settlement and adjustment of their accounts, I do not think it ought to be conclusive and prevent its correction. But there ought to be no doubt as to the mistake. That ought to be made to convincively appear and be free from doubt. Now while the defendant denies the mistake, and insists upon the hypothesis that if there was their own laches ought to shut the doors of equity against them so long after the settlement of the partnership, he further insists that it being a disputed matter between them, and by mutual agreement having been referred to competent persons selected by them to investigate and determine the truth of the matter, and another settlement made according to that adjustment, the one paying and the other receiving the amount, that such adjustment must be accepted as final.

We do not doubt that the claim is asserted in good faith, nor that it is denied by the defendant in equal good faith; but it seems to us when the parties by a mutual agreement between themselves selected a mode of settlement, and both acted upon it, and there was at the time no inequality or footing or means of knowledge as to the facts, nor any pretense of fraud or undue advantage or mistake made by those to whom they committed, and agreed to abide by their determination, that such a settlement ought not to be disturbed. All compromises or settlements made of disputed matters in good faith and without fraud, equity is strongly inclined to favor and uphold. Nor will it disturb them in the absence of inequitable conduct vitiating the transaction or settlement, since the purpose is to settle the matter in dispute without judicial controversy. Now the facts narrated

XVI. OR.—27.

and in evidence show that several years after the settlement of the partnership affairs, the plaintiff J. M. Powell claimed that there was a mistake, and sought out the defendant. After some parley they submitted the point in dispute with all the evidence in respect thereto, and a result was reached and a settlement made in accordance therewith. Again, several years have elapsed, and it is sought to re-open the matter again, and to disregard these previous compromises and settlements. Mr. Hudson testifies that "our decision was accepted as final by both parties."

In view of all the facts we do not think equity ought to intervene, and the decree is reversed and the bill dismissed.

On petition for rehearing.

LORD, J.— We have examined the matter suggested by the motion, and do not think the proof sufficient. In principle, it is covered by what has already been said, and there is no purpose to be served by encumbering the record with a review of conflicting facts; and for this reason it was not deemed necessary to give the matter particular mention. In a word, the evidence upon which this second mistake is asserted, in view of the time elapsed since the settlement, the nature of the proof, and its contradiction by the defendant, was not of that clear and decisive character required in such cases. Besides there are equities set up by the defendant in respect to the payment which it would be necessary to investigate if this matter is to be re-investigated. We are all impressed with the conviction that the record does not present such a case as calls for the exercise of the jurisdiction invoked.

The motion is denied.